ORIGINAL

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

PAUL ROZENFELD,

                    Plaintiff,                          COMPLAINT (Jury Trial)

          - against -                        CV 10-4002

DEPARTMENT OF DESIGN & CONSTRUCTION
OF THE CITY OF NEW YORK
ACTORS:David J. Burney, Commissioner,
Eric Macfarlane, Deputy Commissioner,
N. Venugopalan, Assist. Commissioner
Kuriacoze Jacob, Director,
Pasagiannis, Eftihia, Director
Jeanmarie Ariola - Hearing Officer



                    Defendants
---------------------------------------------------------

Plaintiff:      Paul Rozenfeld
Address:        345 East 80th Street, Apt. #19H          GARAUFIS, J.
                New York, N.Y. 10075
                212-396-3730                             BLOOM, M.J

Defendants:     David J. Burney - Commissioner
                Eric Macfalane - Deputy Commissioner
                Narayana Venugopalan - Assistant Commissioner
                Kuriacoze Jacob - Director
                Pasagiannis Eftihia - Director
                Jeanmarie Ariola - Hearing Officer

Address:        Department of Design & Construction
                30-30 Thomson Avenue
                Long Island City, NY 11101

1               Preliminary Statement
This action is brought for discrimination in employment and constructive,
forced retirement in the face of false disciplinary charges filed for retaliation
for Plaintiff's complaints of discrimination.

2               Jurisdiction

This action is brought pursuant to:
-Title VII of Civil Rights Act of 1964, 42 U.S.C. $$ 2000e to 2000e-17

-Age Discrimination in Employment Act of 1967, 29 U.SC. $$ 621-634 (ADEA),
-The Civil Rights of 1991
-New York State Human Rights Law. N.Y. Exec. Law $$ 290 to 297 - 296(a)
-New York City Human Rights Law, N.Y. City Admin. $$ 8-101 to 131. And $ 8-502

3                        Venue

The acts of discrimination occurred and defendants work at:

> Department of Design & Construction
> 30-30 Thompson Avenue
> Long Island City, N.Y. 11101
> ( 28 U.S.C. $ 112 )

Factual Background

  Plaintiff was working as a Licensed Civil Engineer, 72 years old, and in good health,
when he was constructively terminated by DDC on or before January 13, 2010

5.                        State of Facts

a      In March 2008, Plaintiff orally advised Mr. Narayana Venugopalan that he
believed he was entitled to a salary increase pursuant to his union agreement.
The increase was a  $ 1700/year. While he conceded that Plaintiff was
entitled to it, he try to postpone for 2(two) years, which of course was a
falsehood and a violation  of the terms and conditions of employment ." -Exh. "1"

b.      On April 30, 2008, Plaintiff wrote an Email to Venugopalan asking him for
a raise in keeping with the complexity of tasks. It was pointed out and quoted
"U.S. Department of Occupational Outlook, the salary range was $ 97,000. to
120,000. "and not the $ 60,741. the amount the Plaintiff was getting - Exh. " 2"
alluding to Equal Pay Act. Venugopalan refused to answer to this Email.

c.      On May 22, 2008, the Plaintiff emailed to Venugopalan related to receiving
(again) that  union increase of $ 1700. Again the reply indicate  Plaintiff should
have done the work for " sometime(sic) to the satisfaction of your supervisor (at
least a year)" before being considered. So instead of waiting for 2 years,
Venugopalan was suggesting only one year wait(this time around!)
This was a violation of terms and condition of employment, a violation of
contractual agreement

d.      In July, 2008, Plaintiff asked  Deputy Commissioner Eric Macfarlane when
he will receive the requested increase.. While Macfarlane acknouledge the fact
that Plaintiff work was very good, he was evasive in answering.

e.      In November 2008, Plaintiff contacted again Mr. Macfarlane stating that
after more than 3 months he still did not get an answer regarding that $1700.00
increase.

f.      In July 9, 2009, Kuriakose Jacob - Director - working under Venugopalan handed
 to plaintiff an evaluation frought with illegalities:    Exh "3"
In keeping with DDC written rules, only a direct supervisor is entilted to give the

evaluation. Plaintiff's direct supervisor was Mr. Fahid Nammouor and he always expressed satisfaction with Plaintiff's work.
During 2008 and 2009, Kuriakose never checked Plaintiff's work, never communicated with the Plaintiff, contrary to DDC rules, contrary to elementary rules in management.
Because F. Nammour was getting his evaluation from Kuriakose Jacob, he was put in a precarious position to keep silent (otherwise he could had his position geopardized).

g.   The main purpose of the " evaluation " was to besmirch, denigrate and slander not only Plaintiff's professional performance but particularly to attack his character... In concert with his objective Kuriakose Jacob gave freedom to his hate prejudice and malice against a white skinned employee and at point 10 of the evaluation "relation with co-workers and the public at large " he belittled the plaintiff with the rating "1" (one being the lowest, "5" being the highest).
In sharp contrast with his debased assessment, over 60 employees testified to the effect that " Paul Rozenfeld is courteous, respectful and sensitive to feelings and interests of the co-workers. He has shown tact and maturity in relationship with co-workers.. With a smile on his face he communicates camaraderie and good will " (Exh. ⁶ 4     )

h.   It should be noted that out of 1100 employees, no one got rated "1"
(relation with co-workers and the public) Plaintiff felt so debased and humiliated as to raise the question of this "rating" with Deputy Commissioner Eric Macfarlane. His answer was that rating "1" is very is very unusual and he advised the Plaintiff to check his personal file .
The next day Plaintiff checked his personal file and it was clean, with no complaints.
When going back to Macfarlane with the findings, he stated that "I shall put it in writing  "

g.   In July, 22, 2009, Plaintiff sent an Email to Macfarlane and Kuriakose Jacob protesting the "evaluation" and " taking  exception to the evaluation in its entirety, and to each and every point. ( see Exh. "5 "   )

h.   Not getting any answer to this Email I again contacted Macfarlane on Sept. 2009.
Macfarlane acknowledge that the evaluation was wrong but "because this is an election year and is not for sure who will be the next mayor he does not want to produce waives"
(the conversation took place before Nov.3 2009 when the election of the Mayor was scheduled)
i.......Macfarlane also intimated that age plays an important role in the performance of people in sports, extrapolating this idea to engineering performance which of course represent the wrong assumption, nothing further from the truth.

j.........In Sept.,2009~Exʰ⁶ -   Plaintiff submitted a request to the Review Board of D.D.C. regarding the evaluation The rating regarding relationships with co-workers of "1" was changed to "3" under the weight of the written testimony of 60 co-workers. The Review Board is made up by Director of Labor Relation and EEOC of DDC. They are not engineers so they did not want to change the other ratings,

k.   In retaliation that Plaintiff dared to apply to the Review Board , Venugopalan in collusion with Kuriakose Jocob skimmed, plotted, connived and contrived to put him on trumpet- up, invented disciplinary proceedings.

l.   On Sept.24, 2009, Eftihia Pasagiannis, Director, Office of Disciplinary Proceedings handed to Plaintiff a Memo charging him of an alleged disturbance right in front of her office and the office of Investigator - Jeanmarie Ariola, 5(five) months before, back in April 2009....!!!???
If the disturbance occurred, why Pasagiannis and Ariola waited 5 months to present

the charges !!!??? ( the alleged disturbance happen right in front of their offices)

m.     Ceding under the pressure of the Assistant Commissioner Venugopalan, Pasagiannis came out with a phony charge against the Plaintiff. (information and believe)  Exh # 7

n.     Disavowing and invalidating the clumsy maneuver of Pasagiannis, 17(seventeen) employees located in the immediate proximity of the claim of alleged disturbance testify in writing that " they never heard Rozenfeld speaking with his voice raised or inappropriately (Exh. * 8   )

o.     Immediately, after getting Extremist Pasagiannis's memo with the Big Lie, Plaintiff asked Pasagiannis "to get 2(two) weeks time to get a lawyer specialized in this kind of proceedings" Extremist Pasagiannis and her assistant - Jeanmarie Ariola - refused the request...( Please see Email of Sept. 24, 2009 attached herewith - Exh. # 9   )

p.     By ignoring Plaintiff legitimate request to get a lawyer, Pasagiannis acted cowardly and concertedly  to deny Plaintiff's legitimate constitutional rights as grave infringement of Due Process - as to trampling under her foot his elementary rights.

q.     By not getting the time to chose and get a lawyer, Pasagiannis pushed on Plaintiff Michelle Keller a union representative that was in cozy relationship with Pasagiannis and subsequently acting in cahoots with her to the betrayal of the interests of the union member - the Plaintiff ....

r.     Ms Keller "advised" the Plaintiff that "the management is up to no good, that is determined to hurt the Plaintiff " so it is "better to retire rather than fight." She never mentioned "signing a stipulation"

s.     "The Stipulation was handed to Plaintiff on Oct.6, 2008 , with a content and intent aimed to defend and cover up the wrong doings of DDC. ( Exh  10 )

t.     On Oct.6 and Oct.7 Plaintiff Emailed to defendant Pasagiannis 2(two) Emails in which he expressed his indignation and protested to each and every point of the stipulation, contradicting the assertion that coercion and duress were absent ( Exh." 11" ). & (Exh "12' )
So the stipulation was unlawful because it was signed under conditions of extreme coercion and duress: the Plaintiff was threatened by defendant MacFarlane that if not signed the Plaintiff will be terminated anyway and on top will lose all his rights (health and pension benefits)

u.     The stipulation was unlawful from the rules governing contracts in that there was the request for acceptance with no offer or stated consideration, was drown unilaterally, for the defendants.

v.     The stipulation does not constitute a knowing and voluntary waiver of Plaintiff's ADEA claim because if fails to comply with the requirements of the Older Workers Benefit Protection Act (OWBPA). It does not specifically mention the ADEA. It does not advise Mr. Rozenfeld to consult an attorney. It was induced by fraud, duress, undue influence and other improper conduct by DDC and it was procured in connection with trumped up disciplinary charges. Plaintiff did not have sufficient time to review and consider the advantages and disadvantages of the " agreement " because had only three business days prior to the hearing at which he allegedly agreed to enter into a stipulation, and then only two days between being handed the actual stipulation on October 5, 2009, and being required to sign it on Oct. 7, 2009.

x.     This time limitations clearly discouraged him from consulting with counsel of his choice and do not comply with the requirement that he be given 21 days to consider the waiver.

Moreover, Mr. Rozenfeld input in negotiating the terms was ignored insofar as he objected in writing (Emails) to paragraphs 5, 6, and 7 of the purported waiver. Furthermore, it fails to recite any new consideration was offered.    Exh "II"

y.    Standing as a more universal principle no stipulation can deprive an American from his inalienable rights, his constitutional rights ( 14 Amendment ),so in the Plaintiff's view the stipulation does not stand scrutiny.


z.        Misdeeds of Individual defendants.

Wrong doings do not happen in the void. Usually there is a cultural and environmental climate that make them possible:

A1    Defendant David J. Burney has shown a callous disregard and indifference toward DDC employees by refusing to hear them. to talk to them, to be in touch....He proved aloofness, refusing to listen whether were engineering issues, management issues or personal issues, all of which his subalterns did not care to solve throw incompetence, dereliction of duties, negligence or gross negligence.
When attempting to speak to him, his Chief of Staff stated that " Commissioner does not talk to employees" Under his "leadership" engineers that perform well are pushed into oblivion or forced to leave through harassment while engineers whose projects came back to DDC for modification, alterations, and enumerable change orders are paradoxically promoted.
He appears to be subjected to charges of malfeasance and failing to do what he is supposed to do......by omission.




A2
Defendant Eric Macfarlane, Deputy Commissioner, in addition to have shown
a multiplication of David Burney's lapses, he is known to display a vicious character.
He happens to be black and during his employment at D.E.P. he threatened at that
time his supervisor Thomas Camagnia that if he is not promoted he will contact EEOC .
The white supervisor gave in out of fear and made him a group leader..
His ascension to Deputy Commissioner has nothing to do with engineering skills or
management skills, but more to do with continuous, uninterrupted threats to his
white supervisor that if he is not promoted he will file with EEOC.

What type of intelligence he has if he can tell an experienced and productive
employee that the employee is ' too old", that "people in sports retire at 35 years
of age ", extrapolating to engineering field.

What kind a Deputy Commissioner is he when he tells an employee that he does
not want to ' produce waives ' until he knows who will became the next mayor"?

What kind of Deputy Commissioner is he when he dares to criticize and threaten

employees that signed testimonials in favor of plaintiff (tampering with witnesses) ?

A-3  Defendant Pasagiannis Eftihia in charge with " Discipline " is there to protect and
defend everything that is wrong and dishonest and to prosecute employees that
are productive, honest and who value their integrity.
" Working " directly with and under defendant David Burney she is in the business
of power abuse, using what is known as unlimited power.
Not without reason she is known as the " guillotinier " (a person that operates
guillotine).

Her most frequent tools she employs are coercion, intimidation, threats, everything that 503(b) of the
1964  and the Act of 1991 prohibits.
The fear she perpetrates are reminiscent of a dictatorial regime.

A4  Defendant Venugopalan has surround himself and promoted only technicians of the same color and
etniticity. He acts in a prejudicial manner toward white skined employees. A case in point is Mr.
Anthony Pollio, Director for the Borough of Queens. He also filed discrimination charges against
Venugopalan.

A number of years ago Venugopalan filed fake disciplinary charges against Plaintiff, charges that
were dismissed in the Supreme Court

A 5  Defendant Kuriakose Jacob never checked Plaintiff's work, never communicated in a
whole year with Plaintiff. He gave grade "1" – relation with co-workers and by DDC
written rules his "evaluation" was illegal because he was not Plaintiff's direct supervisor.
He deliberately lied to each and every point of evaluation, killing any possibility of
Plaintiff's promotion.  Testimony to Jacob's misdeeds is the 60 employees that signed
testimonies opposite to his "evaluation."

COURSES OF ACTION

First Cause of Action

42 U.S.C. $ 1983 Against DDC, City of New York

6.     All other paragraphs herein are incorporated by reference as though fully set forth

7.     By artificially charging Plaintiff with trumped up disciplinary slogans, and by deliberately assigning to Plaintiff false ratings, by creating and maintaining a hostile work environment, by and stand out clear actions of retaliation DDC has engaged under color of law in violation of his rights under the Fourteenth Amendment to U.S. Constitution 42 U.S.C. $ 1983 inter alia. Violation of 14 Amendment by not allowing time to consult an attorney, though plaintiff made the request verbally and in writing.

Second Cause of Action

42 U.S.C. $ 1983 Against the individual defendants

8.     All other paragraphs herein are incorporated by reference as though set forth.

9.     The violations were perpetrated with full knowledge and intent by defendants, 42 U.S.C. and

$ 1983 and point "7" above.

Third Cause of Action

42 U.S.C. $$ 2000e-17 against DDC, City of New York

29 U.S.C $$ 621-634 (ADEA), Civil Rights Act of 1991 and Older Workers Benefit Protection ACT

(OWBPA)

10.    All other paragraphs herein are incorporated as though fully set forth

11.    Under the disguise of trumped up disciplinary, under threats and blackmail by defendant Macfarlane and the other defendants that if plaintiff does not retire he will be losing everything, plaintiff was forced into submission to sign the stipulation.

12.    The stipulation does not constitute a knowing and voluntary waiver of his ADEA claim because if fails to comply with the requirements of the OWBPA. It does not specifically mention the ADEA. It does

not advise plaintiff to consult an attorney, nor did it ever give the material time to seek the counsel's advice.

13.      It was induced by fraud, duress, undue influence and other improper conduct by DDC and it was procured in connection to trumped up disciplinary charges.  Plaintiff did not have sufficient  to review and consider the advantages and disadvantages of the agreement because he has only three business days at which he allegedly was let know to enter into a stipulation, and then only two days between being handed the stipulation on Oct. 5, 2009, and being required (forced) to sign it on Oct. 7, 2009.

15.      These time limitations clearly discouraged him from consulting with counsel  of his choice and do not comply with the requirement that he be given 21 days to consider the waiver.

16.      Moreover , plaintiff's input in negotiating  the terms was ignore insofar as he objected to paragraphs 5,6, and 7 the purported waiver.

14.      Furthermore, it fails to recite any new consideration was offered (contract law) .

Fourth Cause of Action.

42 U.S.C.  $$ 2000e to 200017-e and OWBPA

29 U.S.C. $$ 621-634 (ADEA),  Civil Rights of 1991

Against individual defendants

15      All other paragraphs herein are incorporated by reference as though fully set forth.

16.      As stated  in points "7" to "14" these violations were done by each and every defendant with clear intent and awareness of their wrongdoings  perpetrated against plaintiff.

Fifth Cause of Action against DDC. City of New York

New York State Human Rights Law. N.Y. Exec. Law  $$ 290 to 297 -  296(a) and N.Y. Administrative Law $$ 8-101 to 131. and $ 8- 502

17.      All other paragraphs  herein are incorporated by reference as though fully set forth.

18.      Premises from point "7" to "14" are also in violation of the quoted above laws of N.Y. State and New York City.

Sixth Cause of Action against individual defendants. N.Y. 290 to 297 -296(a) and N.Y Administrative Law $$ 8-101 to 131 and $ 8-502

19.   All other paragraphs herein are incorporated by reference as though fully set forth.

20.   Violations "7" to "14" fully applies to individual defendants

Closure Statement

By the actions described above,  DDC and individual defendants jointly and severally violated Plaintiff's employment rights, rights to continue in employment, constitutional rights under Federal Laws, N.Y . State  Laws and N.Y. City Laws -quoted above . As a result Plaintiff continues to suffer financially and psychologically .

21  -Wherefore Plaintiff  request the Court to assume jurisdiction over this matter.

22               Demand For Damages:

- Economic Damages
- Compensatory damages
- Punitive damages
- Attorney's fee and costs
- Such other relief that the Court deems equitable and just

Demand by jury trial

- 

Paul Ahlld          Sept .1. 2010

EEOC Form 161-B (11/09)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

| To: | Paul Rozenfeld<br>345 East 80th Street,, Apt. # 19-H<br>New York, NY 10075 | From: | New York District Office<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |
|---|---|---|---|

| | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a)) |
|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 846-2010-05204 | Patricia M. Araujo,<br>Investigator | (212) 336-3681 |

**NOTICE TO THE PERSON AGGRIEVED:**

(See also the additional information enclosed with this form.)

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[ ] More than 180 days have passed since the filing of this charge.

[X] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[ ] The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Spencer H. Lewis, Jr.,
Director

06/04/10
(Date Mailed)

Enclosures(s)

cc: **NYC DEPARTMENT OF DESIGN & CONSTRUCTION**
David J. Varoli, General Counsel, Legal Department
30-30 Thompson Avenue
Long Island City, NY 11101

**EXHIBIT "1"**



**Rozenfeld, Paul**

| | |
|---|---|
| **From:** | Venugopalan, Narayana |
| **Sent:** | June 10, 2008 10:09 AM |
| **To:** | Rozenfeld, Paul |
| **Cc:** | Jacob, Kuriakose; Nammour, Fahid |
| **Subject:** | Re: Salary  raise, differential |


```
??
-------------------------
Sent from my BlackBerry Wireless Handheld


----- Original Message -----
From: Rozenfeld, Paul
To: Venugopalan, Narayana
Cc: Rozenfeld, Paul; Jacob, Kuriakose; Nammour, Fahid
Sent: Tue Jun 10 10:03:12 2008
Subject: RE: Salary  raise, differential




_____

From: Venugopalan, Narayana
Sent: May 22, 2008 4:35 PM
To: Rozenfeld, Paul
Cc: Jacob, Kuriakose; Nammour, Fahid
Subject: RE: Salary raise


Paul:

You have to wait for sometime.  In order to be eligible for salary differential for survey
review work, you should have done this work for sometime to the satisfaction of your
supervisor ( at least a year) .  Only after that we can recommend you for this
differential. In your case, I believe that George Cowan assigned you this work.  Jacob /
Frank can confirm as to when you started this work.




       _____

       From: Rozenfeld, Paul
       Sent: May 22, 2008 4:12 PM
       To: Venugopalan, Narayana
       Cc: Rozenfeld, Paul
       Subject: Salary raise



       To: Mr.N. Venugopalan, Assistant Commissiner, Program Administration

           Dear N. Venugopalan,

       As per our conversation of May 7, 08, what needs to be done so I can receive
       the increase you said I was entitled to...?

                                            Thank you for your attention
to this matter,

                                                         Paul Rozenfeld,
P.E.
```

**EXHIBIT "2"**

Ex 13 

## Rozenfeld, Paul

**From:** Rozenfeld, Paul
**Sent:** April 30, 2008 12:47 PM
**To:** Venugopalan, Narayana
**Cc:** Rozenfeld, Paul
**Subject:** Asking for a raise

To: Mr.N. Venugopalan, Assistant Commissioner, Program Administration

Dear N. Venugopalan,

As you are aware our budget (D.D.C.) for engineering projects - roadways, sewers, water mains - designed to make our City a better one exceeds One billion and 700 millions..
The base work for these projects are done by Engineering Consultants and submitted to our design section as "Surveys".
It is of outmost importance that these Surveys accurately reflects the ground situation in keeping with " as built " situation. Put differently, these surveys idyllically should be free of inaccuracies or mistakes.
My duties is to check these projects (surveys) before they are submitted to our design section. If inaccuracies or mistakes are found, these surveys are sent back to the consultants and then I need to check if the corresponding corrections were made.
As a way of exemplification I will quote more recent projects I worked on ... For instance, in the Project HWD105, Hugh Grand Circle and Westchester Ave., Consultant Sidney B. Bowne, there were more than 6 (six) corrections. Project HWQ - 1682, Roadway improvement in Shore Front Parkway, 5 (five) corrections have to be made....
Examples can go on and on and on...
Needless to say, it takes a lot of knowledge skill and experience in detecting inaccuracies and mistakes.
And of course this work saves a lot of design time and aggravations for our design section (D.D.C.' main business), not to mention substantial amount of money being saved.
I bring to this work over 25 years of experience ( D.E.P. + D.D.C.) in the design and supervision construction of multimillion dollars projects.
What elevates these projects is that their design never came back for modifications, alterations, change orders...
Whether was design or execution, all these projects were delivered in time, many of them before schedule..
It was precisely of this proven record of accomplishments that the Assistant Deputy Commissioner of Design entrusted me to perform this type of complex assignment two years ago.
Mr.. Fahid Nammour - Deputy Director who coordinates and prioritizes my assignments and with whom I closely work, expressed his satisfaction about my results to his Director - Mr.Kuriakose Jacob - which confirmed to me through an appointment two weeks ago.
Incidentally, in keeping with the U.S. Department of Labor's Occupational Outlook Handbook the salary range for a Professional Licensed Engineer with no less than a quarter of century experience varies from $ 97,863 to $126,571 per year and not the $60,741 - the amount I am getting now....
So, Mr.Venugopalan, as proven, I request an increase not just based on my seniority but on my extra efforts to continuously deliver complex work in a high quality fashion with total and unbound commitment to engineering integrity and excellence.
I strongly believe that through my responsibilities, my efforts bring an important contribution to our Department to achieve its objectives.

Thank you for your attention to this matter
Respectfully submitted,

Paul Rozenfeld, P.E.

P. Milld

*I was discriminated regarding promotion. I was paid only 60% of what I was entitled Equal Pay Act (EPA) appears to be enforceable at the case at bar*

04/30/2008

EXHIBIT "3"

(5)

# NON - MANAGERIAL PERFORMANCE EVALUATION FORM

| NAME: Paul Rozenfeld, P.E. | | EMPLOYEE ID#: 0217189 | |
|---|---|---|---|
| TITLE: Civil Engineer 1 | DIVISION: Infrastructure | | UNIT: Prog. Admin./Engring Support |

| RATING PERIOD: | | NAME OF | |
|---|---|---|---|
| FROM: 7/1/2008 | TO: 6/30/2009 | SUPERVISOR: Kuriakose Jacob, P.E. | |

## A. POSITION RESPONSIBILITIES, GOALS AND PERFORMANCE EXPECTATIONS

| | | |
|---|---|---|
| 1. | Responsible for planning and coordinating the surveys for DDC's capital projects. Schedules are to be set and maintained. | R _N/A_ |
| 2. | Review preliminary and final survey drawings to ensure correctness and completeness. | R _3_ |
| 3. | Research, analyze and collect all necessary data needed to complete the survey review process | R _3_ |
| 4. | Maintain system of files and records past and present projects. Files to be kept in an orderly fashion and readily accessible. | R _N/A_ |
| 5. | Effective in planning and executing work assignments. Performs task with minimum supervision and insures efficient use of manpower. Work flow smooth and timely and backlog minimal | R _2_ |
| 6. | Maintains an accurate database for all projects assigned. | R _N/A_ |
| 7. | **Rules and Procedures** Adheres to all administrative procedures and rules including those governing time and leave. | R _2_ |
| 8. | **Quality of Work** Able to produce work which is of high quality, neat, thorough, with few omissions/errors, regardless of volume. | R _3_ |
| 9. | **Quantity of Work** Consistently produces a good volume of work. Is able to manage time and prioritize assignments in order to meet deadlines. | R _2_ |
| 10. | **Relationships with Co-worker/Public** Employee is courteous, respectful and sensitive to feelings and interests of co-workers and/or public. Demonstrates tact and maturity in relationships with others. Responds to callers in a courteous manner. | R _1_ |
| 11. | **Judgment** Anticipates problems, independently takes appropriate action, and uses resources to best advantage. Asks supervisor for assistance when necessary to handle assignments or difficult issues. | R _2_ |
| 12. | **Adaptability** Receptive to new instructions/ideas and applies them quickly. Responds positively to guidance and constructive criticism. | R _2_ |
| 13. | **Reliability** Handles difficult problems with little or no supervision and follows through to completion. Informs supervisor of status of assignments and notifies supervisor of problem issues on a timely basis. | R _2_ |

**OVERALL RATING:** _2_

## RATING SCALE

| 5 = exceptional | 4 = greatly exceeds requirements | 3 = fully meets requirements | 2 = needs improvement | 1 = unsatisfactory |
|---|---|---|---|---|

## NOT RATED OR NOT APPLICABLE (NR OR NA)

Performance cannot be rated due to insufficient time in position or the factor to be rated is not applicable.

**B. RATING JUSTIFICATION COMMENTS:**

Individual ratings above or below "Fully Meets Requirements" for rated responsibilities in section A must have supporting comments/justification. (List comments below and number the applicable Responsibility)

Mr. Rozenfeld needs improvement in his performance for Section A - item 5 & 7.

Mr. Rozenfeld should show more interest and attention to improve his ability to produce more volume of work.

**C. COMMENTS/JUSTIFICATION FOR OVERALL RATING:**

(Include significant factors impacting overall performance level/rating not accounted for elsewhere.)

Have received several complaints from co-workers and other agency personnel regarding his insensitive interaction with them

**D. RECOMMENDATIONS/PLANS:**

**E. EMPLOYEE COMMENTS:**

Signing under protest
see attachment (#1) - Factual data of my work results
see attachment (#2) - evaluation of former supervisor
Viljar Boch (many years supervisor)

(Note: The employee's signature below does not necessarily indicate agreement with appraisal, only that it has been communicated to the employee.)

| Beginning of rating period: | End of rating period: |
|---|---|
| REVIEWING MANAGER'S SIGNATURE: | REVIEWING MANAGER'S SIGNATURE: |
| _NB_  11·7·08  date | _____  date |
| RATING SUPERVISOR'S SIGNATURE: | RATING SUPERVISOR'S SIGNATURE: |
| _Rozelos_  11-7-08  date | _____  date |
| EMPLOYEE'S SIGNATURE: | EMPLOYEE'S SIGNATURE: |
| P. _____  11/7/08  date | P. _____  7/22/09  date |

**EXHIBIT "4"**

To whom it may concern....                    July 9, 2009

We have known Paul Rozenfeld for quite a number of years.
He is courteous, respectful and sensitive to feelings and interests of co-workers.. He has
demonstrated tact and maturity in relationship with co-workers.
It appears that authenticity and reliability are characteristics that define him.

| Name | Signature |
|------|-----------|
| Luis Garcés | *(signature)* |
| VLADIMIR POKROSS | *(signature)* |
| Mohammad Hagre | *(signature)* |
| Annie Greene | Annie Greene |
| Tien S. Wu | Tien S. Wu |
| Lyudmila Yakivevicu | *(signature)* |
| Gener de Franz | GEORGE FRANZ |
| *(signature)* | Joseph Weinstein |
| JOEL CASPIR | *(signature)* |
| *(signature)* | Michael Kliger |
| Nadja Hanna | *(signature)* |
| A. Faiten | A. FAYTENZON |
| GENE YAMPOLSKY | *(signature)* |
| Paul Leung | *(signature)* |
| Raisa Shataykina | *(signature)* |

To Whom It May Concern:                    July 16, 2009

I have known Paul Rozenfeld for quite a number of years.
I perceive him as being courteous, respectful, attentive and considerate.
With a smile on his face he communicates camaraderie and good will.

| Name | Signature |
|------|-----------|
| TATIANA PERLIN | |
| DAVID MCKINNON | |
| Holene Legros | |
| EFIM TABLIN | |
| Tatsiana Kozlova | |
| Dazhi Sheng | |
| YELENA DVORYAN | |
| Soad Makar | Soad Makar |
| Magda Khalil | Magda Khalil |
| S. Borshon | |
| Hone N. Hue | Hone N. Hue |
| Alla Ayzenshtat | Alla Ayzenshtat |
| David Opuh | |
| Yves Belancourt | Y Belancourt |
| Anthony Nieves | |
| Enis Penaherrera | |
| James Condoleon | |
| Lorraine Dunets | Lorraine Dunets |
| BRANDON VINYARD | |
| MARIO VALENTI | |

**EXHIBIT "5"**

**Rozenfeld, Paul**

| | |
|---|---|
| **From:** | Rozenfeld, Paul |
| **Sent:** | July 22, 2009 2:16 PM |
| **To:** | Macfarlane, Eric |
| **Cc:** | Rozenfeld, Paul |
| **Subject:** | Performance evaluation transmitted on July 9, 2009 by K. Jacob - Director to P. Rozenfeld |

Dear Kuriakose Jacob,

I take exception to your evaluation in its entirety and herewith are my comments:.

On point #2 (in the evaluation) - Review preliminary and final survey drawings, the rate should be 4 not 3.
On point #3 - Research and analyze data, the rate should be 4 not 3.
Point #4 - I do keep files in an orderly fashion therefore should be 3 not N/A
Point #5 - Effective in planning and executing work assignments: It should be 4 not 2. Here is the proof:

Project HWXP 136A, completed on Jul.30.08, Estimate Cost - $12,556,000.00
Project MED596 completed on Aug. 19, 08.....Estimate Cost -  $8,242,650.00
Project SER002313..................... Sept.2,08......................$9,726,000.00
HWQ411B....................................Sept.16.08.....................$22,839,000.00
QED990.......................................Oct.06.08........................$7,210,000.00
SEQ200508................................Oct.08.08........................$2,102,600.00
SECBMTAQ1............................. Nov.13.08.......................$305,800.00
SECBMTAX1................................Nov.26.08.......................$404,000.00
MED606......................................Dec.10,08....................$9,291,100.00
SE-817........................................ Jan.13,09.................... $15,593,500.00
SER200237................................Jan.29,09.....................$600,000.00
SECBMTAN1..............................March.10,09..................$281,000,00
SECBMT2....................................March 25,09.................$432,400,00
SEQ200534 ...............................May 9,09......................$3,878,000.00
SER200214.................................June,17,09..................$2,589,850.00

Total.........................................................................$ 96,070,550.00

Point #7  It should be 4, not 2. because I did adhere to all administrative procedures.
Point # 8, Quality of work, should be 4+
Point #9  Quantity of work should be at least 4+ not 2 (see please #5)
Point # 10 relationship with co-workers at least 4+ not 1
Point # 11 Judgment should be at least 4, not 2
Point # 12 Adaptability - should be 4 not 2
Point # 13 Reliability, should be 4 not 2.

During the period from July 2008 to July,2009 (rating year)
you communicated content with my work
During the same period of time I never had any disagreement with you or anyone else.

Kindly please revised the evaluation in accordance with my professional performance,
in keeping with my work results.
Also I have had and still have excellent relation with my co-workers and the public at large,
so rate 1 should be change to 4+ .

Thank you for your attention to this matter.

08/04/2009

**EXHIBIT "6"**



**Rozenfeld, Paul**

| | |
|---|---|
| **Subject:** | PE Appeal |
| **Location:** | 4th floor, Room 433 |
| **Start:** | Fri 09/25/2009 10:00 AM |
| **End:** | Fri 09/25/2009 11:00 AM |
| **Recurrence:** | (none) |
| **Meeting Status:** | Accepted |
| **Required Attendees:** | Rosinger, Cecilia; Rozenfeld, Paul; Nammour, Fahid; Chang, Jason |

1

**EXHIBIT "7"**



**NEW YORK CITY DEPARTMENT OF**
**DESIGN + CONSTRUCTION**

# MEMO

**DATE:**     September 24, 2009

**TO:**       Paul Rozenfeld, *Design Engineer*

**FROM:**     Eftihia Pasagiannis, Director, Office of Disciplinary Proceedings   *EP*

**SUBJECT:**  **Directive to Report to the Office of Disciplinary Proceedings**

You are hereby directed to report to the Office of Disciplinary Proceedings, 30-30 Thomson Avenue, 4th Floor, Room 421, Long Island City, New York on, Thursday, October 1, 2009 at 10:00 A.M.

You are directed to appear at an interview to answer questions regarding an incident that you were involved in on the 4th floor on April 30, 2009, as well as questions regarding your work performance as a *Design Engineer* in the Program Administration Unit.

You are entitled to be accompanied by a Union Representative or a lawyer at this interview.

Pursuant to DDC Rule 10 (D), failure to comply will result in disciplinary action against you.  If you have any questions, you may contact Investigator Jeanmarie Ariola at ext. 1838.


Cc:  Local 375
     125 Barclay Street 6th Floor
     New York, NY 10007
     (212) 815-1375
     Fax (212) 815-7533
     Attn: Michelle Keller


P. *[signature]*
_____
Signature of Employee:

_[signature]_
_____
Served By:

9/24/09
_____
Date

11:12 AM
_____
Time

**EXHIBIT "8"**

*Exh. 9*

To whom it may concern                          September 30, 2009

I have known Paul Rozenfeld for quite a number of years.
I never heard him speaking with his voice raised or inappropriately.
I perceive him as being courteous, respectful, attentive and considerate.
With his smile on his face he communicates camaraderie and good will.

| Signature | Printed Name |
|---|---|
| *[signature]* | EDWARD NICASTRO |
| *[signature]* | Everett Brown |
| *[signature]* | Sarirah Abraham |
| *[signature]* | Florence Green-Zelaya |
| *[signature]* | Patrice Kope |
| *[signature]* | Sharon Damanowski |
| *[signature]* | Maria Delgado |
| *[signature]* | Abraham Almodovar |
| *[signature]* | Denise Ray |
| *[signature]* | Dashawn Joseph |
| *[signature]* | Rasheda Uddin |
| *[signature]* | Rocio Melendez |
| *[signature]* | Darin DiWson |
| *[signature]* | Elizabeth Mejia |
| *[signature]* | Jeffrey L. Martin |
| *[signature]* | Zinaida Epshteyn |
| *[signature]* | Graciela Yanez |

**EXHIBIT "9"**

( 1 ○ )

# Rozenfeld, Paul

**From:**   Rozenfeld, Paul
**Sent:**   September 24, 2009 7:46 AM
**To:**   Ariola, JeanMarie
**Cc:**   Rozenfeld, Paul
**Subject:** Proceedings for Disciplinary Charges

Dear Ms Jeanmarie Ariola,

Before any scheduled hearing on this matter I will appreciate if you
can give me 2 or 3 weeks time, to find a lawyer specialized in this kind of
proceedings.

Thank you for your attention to this request

Respectfully,

Paul Rozenfeld

09/24/2009

Exh. "10"

/2

NEW YORK CITY
DEPARTMENT OF DESIGN AND CONSTRUCTION
xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx

**In the Matter of Charges and Specification**            **STIPULATION**

                    **against**                           **OF**

                                                          **SETTLEMENT**

            **Paul M. Rozenfeld**
            *Design Engineer - DDC*
xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx

It is hereby stipulated by and between Paul Rozenfeld and the *NYC Department of Design and Construction* that:

1.  Mr. Rozenfeld acknowledges the receipt of the September 24, 2009 Directive to Report to the Office of Disciplinary Proceedings ("ODP") on October 1, 2009 for a disciplinary interview.

2.  Mr. Rozenfeld acknowledges that the purpose of this disciplinary interview is to answer questions regarding his alleged poor work performance, as well as questions regarding an April 30, 2009 incident when he allegedly engaged in disorderly and disruptive conduct on the 4th floor in the vicinity of the agency's Legal Department.

3.  Mr. Rozenfeld acknowledges that the October 1, 2009 disciplinary interview has been adjourned due to his submission to the ODP of a copy of his September 22, 2009 "Intent to Retire" form.

4.  Mr. Rozenfeld agrees that in lieu of any further disciplinary investigation or proceeding regarding allegations of misconduct and/or incompetence on his part, as described in paragraph 2 above, he shall retire from City/DDC employment, as indicated on his "Intent to Retire" form.  Mr. Rozenfeld understands that should he rescind his intent to retire, the ODP reserves the right to reinstitute the disciplinary investigation and interview described herein.

5.  By agreeing to this Stipulation, Mr. Rozenfeld waives any and all rights granted to him in accordance with the City-wide contract, Section 75 of the Civil Service Law or the grievance procedures set forth in his union's contract with the City of New York.  Mr. Rozenfeld is fully aware that this waiver of his rights is final and irrevocable on this matter.

Rozenfeld Stipulation
Page 2

6.      Mr. Rozenfeld knowingly waives on his behalf and on behalf of his
        successors and assigns any rights to commence any judicial or
        administrative proceeding or appeal before any court of competent
        jurisdiction, administrative tribunal, political subdivision, or office of the
        City or the State of New York or the United States, and Mr. Rozenfeld
        waives any right to make any legal or equitable claims or to initiate legal
        proceedings of any kind against the City and DDC or any members or
        employees thereof relating to or arising out of this Stipulation or the
        matters recited therein.

7.      Mr. Rozenfeld acknowledges that he has entered into this Stipulation
        freely, knowingly, and intentionally, without coercion or duress, and after
        having had the opportunity to be represented by his union, and have had a
        full opportunity to consult with counsel of his choice; that he accepts all
        terms and conditions contained herein without reliance on any other
        promises or offers previously made or tendered by any past or present
        representative of the City or DDC; and that he fully understands all the
        terms of this Stipulation.


_____   10/7/09         _____   10/7/09
Paul M. Rozenfeld          Date       Effie Hasagiannis, Esq.     Date
*Design Engineer*                     *Director, ODP*
*Infrastructure – DDC*                *DDC*

_____   10/7/09
Michelle Keller            Date
*Local 375*

Exh "11"

 *Exh 13*

## Rozenfeld, Paul

**From:** Pasagiannis, Eftihia
**Sent:** October 06, 2009 12:58 PM
**To:** Rozenfeld, Paul
**Cc:** Michelle Keller; Ariola, JeanMarie
**Subject:** RE: Stipulation handed to me on Oct. 5, 2009

Mr. Rozenfeld,

As you are aware on October 1, 2009, you were scheduled to appear at a disciplinary interview regarding your work performance issues and misconduct in the workplace. This interview was adjourned based upon your union representative's statement to me that you are going to retire and are willing to sign a stipulation to that effect.

If you have any concerns about the settlement agreement, you should discuss them directly with Ms. Keller tomorrow. As you have union representation in this matter, please refrain from contacting me directly. Thank you.

Effie Pasagiannis, Esq.
Director, Office of Disciplinary Proceedings

**From:** Rozenfeld, Paul
**Sent:** October 06, 2009 11:56 AM
**To:** Pasagiannis, Eftihia
**Cc:** Rozenfeld, Paul
**Subject:** Stipulation handed to me on Oct. 5, 2009

Dear Ms. Pasagiannis,

As you are aware, on Oct.1,2009, at 10:00 A.M. a meeting
took place in the law library, 4th floor with the following participants:

Ms Jeanmarie Ariola - investigator - your assistant
Ms Michelle Keller - V.P. Local 375
Paul Rozenfeld - Civil Engineer.

At this meeting items #5, #6 and #7 you now inserted
were not brought up or discussed.
Please remove these items from the stipulation you are
asking me to sign.

Respectfully,

Paul Rozenfeld

10/06/2009

$Exh$ "12"

## Rozenfeld, Paul

| | |
|---|---|
| **From:** | Pasagiannis, Eftihia |
| **Sent:** | October 07, 2009 10:47 AM |
| **To:** | Rozenfeld, Paul |
| **Cc:** | Michelle Keller |
| **Subject:** | RE: Stipulation of settlement |
| **Importance:** | High |

Mr. Rozenfeld,

If you email me one more time on your disciplinary matter, you will be brought up on charges for disobeying a **directive to refrain from contacting me directly**.  As I have explained in my previous email, direct all of your concerns to your union representative, Michelle Keller.

**From:** Rozenfeld, Paul
**Sent:** October 07, 2009 8:19 AM
**To:** Pasagiannis, Eftihia
**Cc:** Rozenfeld, Paul
**Subject:** Stipulation of settlement


   Dear Ms Pasagiannis,

 On point #2 of the stipulation you alleged that my "work
performance was poor".
This statement runs counter with the official evaluation
of September 22, 2009 and previous one dated 11/7/08:

Point #2 of these evaluations: "Review preliminary drawings
and final survey drawings to ensure correctness and completeness"......Qualification: 3

Point #3 of these evaluations:" Research, analyze and collect all
necessary data needed to complete the survey review process..............Qualification  3

At the bottom of the evaluation the rating scale is described:

                       3 = fully meets requirements

Therefore the statement alleging poor work performance it is not
based on reality, on the existing evaluation records.
Since you are a lawyer, not an engineer, you need to respect the
the grades given by engineering supervision.

Kindly, remove the allegation of "poor work" from the stipulation.

                    Respectfully,
                    Paul Rozenfeld

10/07/2009