FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ JUL 1 2 2012

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
                                                          :
PAUL ROZENFELD,                                           :
                                                          :        MEMORANDUM AND ORDER
                        Plaintiff,                        :
                                                          :        10-cv-4002 (WFK) (LB)
          -against-                                       :
                                                          :
DEPARTMENT OF DESIGN & CONSTRUCTION OF                    :
THE CITY OF NEW YORK; ACTORS: David J. Burney,            :
Commissioner, Eric Macfarlane, Deputy Commissioner,       :
N. Venugopalan, Assist. Commissioner, Kuriakose Jacob,    :
Director, Pasagiannis Eftihia, Director, Jeanmarie Ariola,:
Hearing Officer,                                          :
                                                          :
                        Defendants.                       :
                                                          :
------------------------------------------------------------------X

**KUNTZ, United States District Judge**

        Plaintiff Paul Rozenfeld ("Plaintiff") brings this action against his former employer, the

New York City Department of Design and Construction ("DDC"), and various individuals

employed by the DDC (collectively "Defendants"). Plaintiff alleges violations of federal and

state laws: Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e; the Age

Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621; 42 U.S.C. § 1983 ("§ 1983");

New York State Human Rights Law ("SHRL"), N.Y. St. Exec. Law § 290; and New York City

Human Rights Law ("CHRL"), N.Y. City Admin. Code § 8-101. Plaintiff asserts Defendants

subjected him to disparate treatment and a hostile work environment based on his race, color,

and age. He also claims Defendants retaliated against him for complaining about the alleged

discrimination. Defendant moves, and Plaintiff cross-moves, for summary judgment pursuant to

Rule 56 of the Federal Rules of Civil Procedure. For the reasons stated, this Court denies the motion for summary judgment by Plaintiff and grants the motion for summary judgment by Defendants.

## INTRODUCTION

Plaintiff failed to submit a response to Defendants' Rule 56.1 Statement of Facts, as required by Eastern District of New York Local Rule 56.1(c). He inserted a "State [sic] of Facts" section near the beginning of his opposition papers: a bland compilation of random items he simply copied and pasted from the complaint. Defendants fully complied with Local Civil Rule 56.2, providing the requisite "Notice to Pro Se Litigant Opposing Motion for Summary Judgment" and attaching the full texts of both Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1. Notice of Defs.' Mot. for Summ. J, at Notice to Pro Se Litigant. This Court has "broad discretion" to determine the effect of noncompliance with the Local Rules. *Holtz v. Rockefeller Co.*, 258 F.3d 62, 73 (2d Cir. 2001). Accordingly, "[e]ach numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for the purposes of the motion . . . ," E.D.N.Y. Local Civ. R. 56.1(c), so long as the factual assertions are supported in the record. *Holtz*, 258 F.3d at 73–74; *Giannullo v. City of N.Y.*, 322 F.3d 139, 140–41 (2d Cir. 2003).

Plaintiff is a seventy-four-year-old, white male. Defs.' Rule 56.1 Statement, at ¶ 1. He began working for the City of New York on March 29, 1982 as a Civil Engineer assigned to the New York City Department of Environmental Protection ("DEP"). *Id.* He was "functionally transferred" to Defendant DDC on June 23, 1996, where he worked until January 2010. *Id.* at ¶¶ 1–3.

While employed with DEP, Plaintiff was served with disciplinary charges in April 1992, which were amended in May 1992. *Id.* at ¶¶ 4–5. After the DEP commissioner sustained the charges, Plaintiff filed an Article 78 proceeding to have the commissioner's decision set aside. *Id.* at ¶ 6. In August 1993, Plaintiff entered into a settlement that required DEP to expunge the charges and all related documents from Plaintiff's personnel file one year later. *Id.* at ¶ 8.

On April 30, 2008 and May 22, 2008, Plaintiff sent emails to Defendant Narayana Venugopalan, Assistant Commissioner for Program Administration, requesting a salary increase for survey review work he had been assigned. *Id.* at ¶¶ 9–10. Defendant Venugopalan responded that Plaintiff would be eligible for the salary differential he requested only after he had performed the work satisfactorily for one year. *Id.* at ¶ 11. Plaintiff received the requested salary increase in or about November 2008, and it was made retroactive to July 2006. *Id.* at ¶ 12.

On or about July 22, 2009, Plaintiff received his annual performance evaluation from his direct supervisor, Defendant Kuriakose Jacob, for the rating period from July 1, 2008 to June 30, 2009. *Id.* at ¶¶ 13–14. He received an overall rating of "2," meaning "needs improvement." *Id.* at ¶ 15. He received a rating of "1," meaning "unsatisfactory," in the category "Relationships with Co-Worker/Public." *Id.* After receiving the evaluation, Plaintiff sent an email to Defendant Deputy Commissioner Eric McFarlane in which he details his disagreement with his ratings and provides his suggested alternative ratings. *Id.* at ¶ 17. Plaintiff believes the "main purpose of the 'evaluation' was to besmirch, denigrate and slander not only Plaintiff's professional performance but particularly to attack his character…[.] In concert with his objective Kuriakose Jacob gave freedom to his hate prejudice and malice against a white skinned employee . . . ." Compl., at 3. Plaintiff appealed his evaluation to DDC's Performance Evaluation Appeals Board, which, on

October 13, 2009, changed his "Relationships with Co-Workers/Public" rating from "1" to "3" but left all other ratings unchanged—including his overall rating of "2." *Id.* at ¶¶ 18, 33.

Plaintiff submitted an "Intent to Retire" form dated September 22, 2009 to the retirement liaison of the Payroll and Time Management Unit. *Id.* at ¶ 19. He wrote that his last day of work would be October 29, 2009 and listed various days of pre-scheduled leave. *Id.* Defendant Eftihia Pasagiannis, Director of the Office of Disciplinary Proceedings, instructed Plaintiff in a memorandum dated September 24, 2009 to report to the Office of Disciplinary Proceedings for an interview on October 1, 2009. *Id.* at ¶ 20. The memorandum stated Plaintiff would be asked questions regarding both an "incident" in which he was involved in April 2009 and his work performance. *Id.* at ¶ 21. The "incident" allegedly involved Plaintiff "exhibit[ing] strange and disruptive behavior" near the Legal Department and asking questions pertaining to a personal legal matter. *Id.* at ¶¶ 22–23.

Plaintiff appeared for his interview on October 1, 2009. However, the interview was adjourned because his union representative indicated Plaintiff intended to retire from DDC and had already submitted an "Intent to Retire" form. *Id.* at ¶ 25. Plaintiff was never served with disciplinary charges for the April 2009 incident. *Id.* at ¶ 26. On October 5, 2009, Plaintiff received a "Stipulation of Settlement" for his review, which he signed and executed on October 7, 2009. *Id.* at ¶¶ 27–28.

Plaintiff's last day of work was October 29, 2009 and his employee identification card was deactivated on November 10, 2009, though he did not effectively retire until January 14, 2010, when his remaining leave balance exhausted. *Id.* at ¶¶ 34, 35, 38. On or about November 27, 2009, Plaintiff sent a letter to Representative Carolyn Maloney of the United States House of Representatives detailing the allegations he makes in the current action. *Id.* at ¶ 36. On March 8,

4

2010, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") in which he alleged discrimination based on race, color, and age, as well as retaliation for complaining about the alleged discrimination. *Id.* at ¶ 39. Plaintiff timely filed a complaint with this Court on September 1, 2010 after receiving a "Notice of Right to Sue" from the EEOC on June 4, 2010. *Id.* at ¶¶ 40–41.

## DISCUSSION

### A. Summary Judgment

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried. In determining whether summary judgment is appropriate, this Court will construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (internal quotations and citations omitted). No genuine issue of material fact exists "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 212 (2d Cir. 2001) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

If the moving party satisfies this burden, the non-moving party must "make a showing sufficient to establish the existence of [each] element to that party's case . . . since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Importantly, if the evidence produced by the non-moving party "is merely colorable, or is not

significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986) (internal citations omitted).

The Second Circuit has "emphasized that trial courts must be especially chary in handing out summary judgment in discrimination cases, because in such cases the employer's intent is ordinarily at issue." *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 87 (2d Cir. 1996); *see Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 71 (2d Cir. 2000). However, it is "beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases." *Abdu-Brisson v. Delta Air Lines*, 239 F.3d 456, 466 (2d Cir. 2001). Therefore, "even in the discrimination context, a plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997).

**B. *Pro Se* Standard**

The Court must read *pro se* complaints liberally and "interpret them to raise the strongest arguments that they suggest." *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006) (internal citations omitted). "However, threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not support a cause of action." *Wright v. Krom*, No. 10-cv-3934, 2011 WL 4526405, at *2 (S.D.N.Y. Sept. 29, 2011) (Owen, J.) (internal citations and quotations omitted). While this Court abides by these standards, it notes Plaintiff's opposition papers contain no page numbers, have mislabeled exhibits, contain deposition transcripts that are pasted into the middle of his arguments and that contain handwritten notes, and generally provide this Court with minimal guidance or evidentiary support for his arguments.

**C. Waiver**

Defendants assert Plaintiff waived his rights under Title VII, § 1983, the SHRL, and the CHRL by executing a Stipulation and Settlement ("Stipulation") on November 18, 2011. They argue Plaintiff signed the Stipulation knowingly and voluntarily, and thus he is barred from bringing any claims under these statutes. Plaintiff counters the purported waiver is unenforceable for two reasons: first, it does not comply with the requirements of the Older Workers Benefit Protection Act (OWBPA), and second, he was coerced into signing the Stipulation. The Court addresses these arguments in turn.

Congress amended the ADEA in 1990 by passing the OWBPA, which states: "An individual may not waive any right or claim under [the ADEA] unless the waiver is knowing and voluntary." *Oubre v. Entergy Operations, Inc.*, 522 U.S. 422, 426 (1998) (citing 29 U.S.C. § 626(f)(1)). The statute is unambiguous that the OWBPA applies to ADEA claims only. Defendants clearly assert Plaintiff has waived his rights to bring all of his claims "with the sole exception of . . . the ADEA." Defs.' Supp. Mem., at 3. Thus, Defendants concede the Stipulation does not release the ADEA claims because "a plaintiff may not waive claims under the ADEA unless the strictures of the OWBPA have been met." Defs.' Reply. Mem., at 3–4. Instead, Defendants assert the Title VII, § 1983, SHRL, and CHRL claims can be, and were, validly waived by Plaintiff. Therefore, the Court will analyze the validity of the waiver as to every claim except the ADEA.

An employee may validly waive his right to bring a discrimination claim under Title VII and § 1983, so long as the waiver is made knowingly and voluntarily. *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437–438 (2d Cir. 1998); *Murray v. Town of N. Hempstead*, No. 09-cv-4120, 2012 WL 43645, at *9 (E.D.N.Y. Jan. 6, 2012) (Spatt, J.); *Drees v. County of Suffolk*,

No. 06-cv-3298, 2009 WL 875530, at \*3 (E.D.N.Y. Mar. 30, 2009) (Bianco, J.).  The Second Circuit has adopted a totality of the circumstances test to evaluate whether a waiver is knowing and voluntary. *Bormann v. AT&T Commc'ns, Inc.*, 875 F.2d 399, 403 (2d Cir. 1989), *superseded by statute on other grounds*, Older Workers Benefit Protection Act, 29 U.S.C. § 626(f). Pertinent factors include: "1) the plaintiff's education and business experience, 2) the amount of time the plaintiff had possession of or access to the agreement before signing it, 3) the role of the plaintiff in deciding the terms of the agreement, 4) the clarity of the agreement, 5) whether the plaintiff was represented by or consulted with an attorney, . . . 6) whether the consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled by contract or law[,] . . . [and 7)] whether [the] employer encourages or discourages an employee to consult an attorney, . . . [and] whether the employee had a fair opportunity to do so." *Id.* These factors "are not exhaustive and not every factor must be in defendants' favor for the release to be found knowing and voluntary . . . ." *Drees*, 2009 WL 875530, at \*3 (citing *Bormann*, 875 F.2d at 403).

Taking these factors and evaluating them under a totality of the circumstances, this Court finds Plaintiff knowingly and voluntarily waived his rights to bring claims under Title VII and § 1983.  First, Plaintiff attended five years at a university and later earned the equivalent of a Master's Degree in Civil Engineering in his native country of Romania, attended Touro Law School for approximately one year, took "some computer science classes" in the 1960s from City College, and worked for twenty-seven years as a civil engineer for the City of New York.  Pl.'s Dep. Tr. 32:25–34:16, 46:20–47:9.  Second, Plaintiff had two days between receiving the Stipulation and signing it.  Compl., at 4.  Third, Plaintiff attempted in two separate emails to negotiate the terms of the settlement, though his efforts were unsuccessful.  Pl.'s Opp'n Mem., at

8

Point I.[1]   However, this also demonstrates that Plaintiff, though preferring different terms, understood and knowingly signed off on the terms of the Stipulation. Fourth, the Stipulation is less than one-and-one-half pages and seven paragraphs. Notice of Defs.' Mot. For Summ. J., at Ex. X. Notably, nowhere in the complaint or moving papers does Plaintiff assert the Stipulation was confusing or unclear.

Fifth, Plaintiff did not consult an attorney prior to signing the Stipulation. However, this does not automatically render the Stipulation invalid, and courts have found waivers to be valid when a plaintiff did not consult an attorney prior to signing. *LaRue v. N.Y. City Off-Track Betting Corp.*, No. 03-cv-783, 2004 WL 2793195 (S.D.N.Y. Dec. 6, 2004) (Berman, J.); *Bachiller v. Turn On Prods., Inc.*, No. 00-cv-8701, 2003 WL 1878416 (S.D.N.Y. Apr. 14, 2003) (Martin, J.). Plaintiff consulted with his union representative. Plaintiff has provided no credible evidence that his union representative failed to represent him adequately, and the representative signed the Stipulation below Plaintiff's signature. Notice of Defs.' Mot. For Summ. J., at Ex. X.

Sixth, Defendants gave adequate consideration under *Bormann* because they agreed not to hold the investigative interview or pursue any other disciplinary action against Plaintiff in exchange for him signing the Stipulation. *Id.* Seventh, there is no evidence Defendants either encouraged or discouraged Plaintiff from consulting an attorney. However, Plaintiff was represented by his union representative during this process. Further, Plaintiff became aware of the investigative interview on September 24, 2009, when he was informed he was entitled to have an attorney or a union representative present. Notice of Defs.' Mot. For Summ. J., at Ex. S. He did not retain an attorney before appearing for his interview one week later, on October 1, 2009, nor did he retain an attorney prior to signing the Stipulation on October 7, 2009. The

---

[1] Because Plaintiff failed to number the pages of his opposition properly, the Court will cite to the broad "Point" headers incorporated into Plaintiff's papers.

Stipulation itself states that Plaintiff "had a full opportunity to consult with counsel of his choice." *Id.*, at Ex. X. Evaluating the *Bormann* factors under a totality of the circumstances test, this Court finds Plaintiff knowingly and voluntarily signed the Stipulation. Therefore, Plaintiff waived his right to bring claims under Title VII and § 1983.[2]

Plaintiff claims he "was forced to sign the stipulation under high pressure, undue influence, extreme coercion and, yes, blackmail." Pl.'s Opp'n Mem., at Point I. He appears to allege two instances in support of this claim: first, Defendants threatened him with disciplinary action, and second, Defendants threatened to refer Plaintiff to a psychiatrist.

Defendants acknowledge they contemplated bringing disciplinary charges against Plaintiff, and they called him in for an investigatory interview. However, this does not nullify the Stipulation. Defendants had the authority to call Plaintiff, as an employee, for an interview. Defendants had the authority to bring disciplinary charges against Plaintiff, and, if they did this, Plaintiff could appeal the decision—a course of action he has taken before. "[A] threat to do that which one has the right to do does not constitute duress," *DuFort v. Aetna Life Ins. Co.*, 818 F. Supp. 578, 582 (S.D.N.Y. 1993) (Freeh, J.) (internal citations omitted), and Defendants did no more than contemplate exercising their right to bring potential disciplinary charges. *Thomas v. City of N.Y.*, No. 03-cv-1797, 2007 WL 2156652, at *6 (E.D.N.Y. July 25, 2007) (Sifton, J.) (rejecting plaintiff's coercion or duress argument even when he allegedly was told he would be fired if he did not sign a waiver).

Plaintiff's second proffered reason is equally unpersuasive. Plaintiff cites a barely legible email in which Defendant Pasagiannis supposedly writes Plaintiff would be referred to a

---

[2] Regarding Plaintiff's SHRL and CHRL claims, "it is well settled that the totality-of-the-circumstances standard is stricter than the ordinary contract law principles for determining whether a release is knowing and voluntary." *Cheung v. N.Y. Palace Hotel*, No. 03-cv-091, 2005 WL 2387573, at *5 (E.D.N.Y. Sept. 28, 2005) (Irazarry, J.) (internal citations omitted). Therefore, because the waiver was valid with respect to the federal claims, it necessarily is enforceable for the state claims as well.

psychiatrist. In the context of providing a basis of coercion or duress, however, this is largely irrelevant. Plaintiff provides no credible evidence that he was aware of this email or any possibility of being referred to a psychiatrist when he signed the Stipulation. Therefore, this supposed "threat," which was not communicated to Plaintiff prior to his signing the Stipulation, cannot form the basis of any claim or coercion or duress. As such, this Court finds Plaintiff signed the Stipulation knowingly and voluntarily.

## D. Discrimination Claims Based On Disparate Treatment

Because this Court finds the waiver valid, it is unnecessary for the Court to reach the merits of Plaintiff's Title VII, § 1983, SHRL, and CHRL claims. However, even if the waiver were deemed invalid, Plaintiff's claims still fail as a matter of law.

Plaintiff asserts a claim for discrimination based on age, race, and color in violation of Title VII, the ADEA, § 1983, the SHRL, and the CHRL. Specifically, Plaintiff alleges Defendants discriminated against him because he is over forty years of age and white. Plaintiff brings discrimination claims under Title VII and the ADEA against the individually named Defendants, in addition to those against the DDC and the City of New York.[3] Compl., at 7–9. However, neither statute provides for individual liability. *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004) ("[W]e note that individuals are not subject to liability under Title VII.") (internal quotations and citations omitted); *Cherry v. Toussaint*, 50 Fed. App'x 476, 477 (2d Cir. 2002) ("[T]he ADEA precludes individual liability."). Therefore, all claims pursuant to Title VII and the ADEA against the individually named Defendants are hereby dismissed.

---

[3] The DDC is a non-suable entity under New York City Charter Section 396. *Jones v. U.S. Dep't of Hous. & Urban Dev.*, No. 11-cv-846, 2012 WL 1940845, at *7, n.1 (E.D.N.Y. May 29, 2012) (Dearie, J.) (citing N.Y.C. Charter § 396) ("All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."). However, because Plaintiff is proceeding *pro se*, this Court construes the complaint as properly naming the City of New York, not DDC, where applicable.

For the individual Defendants to be held liable under § 1983, the SHRL, or the CHRL, Plaintiff must show that each took part in the alleged discrimination. *Provost v. City of Newburgh*, 262 F.3d 146, 154 (2d Cir. 2001) (§ 1983); *Banks v. Corr. Servs. Corp.*, 475 F. Supp. 2d 189, 199–200 (E.D.N.Y. 2007) (Feuerstein, J.) (SHRL & CHRL); *Chapman v. City of N.Y.*, No. 06-cv-3153, 2011 WL 1240001 (E.D.N.Y. Mar. 30, 2011) (Vitaliano, J.) (SHRL & CHRL). Therefore, Plaintiff must charge that each individually named Defendant actually participated in the alleged discriminatory acts. Assuming *arguendo* Plaintiff sufficiently alleged each individual Defendant participated in discriminatory conduct, Plaintiff's claims still fail as a matter of law.

*a. Federal Claims*

Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual . . . because of such individual's race [or] color . . . ." 42 U.S.C. § 2000e-2(a). The ADEA makes it unlawful for an employer "to discharge any individual or otherwise discriminate against any individual . . . because of such individual's age . . . ." 29 U.S.C. § 623(a). Section 1983 provides plaintiffs with the power to bring a suit if they have been subjected, "under color of any statute, ordinance, regulation, custom, or usage, of any State[,] . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983.

In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the Supreme Court of the United States set forth a three-step burden-shifting analysis for courts to apply when analyzing claims of discrimination under Title VII. Courts employ the same burden-shifting analysis when evaluating discrimination claims for disparate treatment brought under Title VII, the ADEA,[4]

---

[4] "'[T]he [United States] Supreme Court ruling in *Gross v. FBL Fin. Servs.* . . . left the *McDonnell Douglas* burden-shifting framework in place for ADEA claims, but requires 'a plaintiff bringing a disparate-treatment claim pursuant to the ADEA [to] prove . . . that age was the "but-for" cause of the challenged adverse employment action' and not

and § 1983. *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010); *Schnabel v. Abramson*, 232 F.3d 83, 87 (2d Cir. 2000); *Annis v. Cnty. of Westchester*, 136 F.3d 239 (2d Cir. 1999). First, a plaintiff must establish a *prima facie* case of discrimination, *McDonnell Douglas Corp.*, 411 U.S. at 802, by demonstrating: (1) "membership in a protected class;" (2) "qualification for the position;" (3) "adverse employment action;" and (4) "circumstances giving rise to an inference of discrimination." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 567 (2d Cir. 2000). "Although the burden of establishing a *prima facie* case is not onerous, and has been frequently described as minimal, the Second Circuit has also noted that a jury cannot infer discrimination from thin air." *Stafford v. N.Y. Presbyterian Hosp.*, No. 06-cv-2150, 2011 WL 1131104, at *5 (E.D.N.Y. Mar. 28, 2011) (Vitaliano, J.) (internal citations omitted).

If a plaintiff establishes a *prima facie* case of discrimination, the burden "then must shift to the employer to articulate some legitimate, nondiscriminatory reason" for its actions. *McDonnell Douglas*, 411 U.S. at 802; *see Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). "This burden is one of production, not persuasion." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). Once the employer satisfies this burden, "the presumption of discrimination drops out of the picture," and the plaintiff bears the burden of demonstrating "by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* at 143 (internal quotations and citations omitted).

As the *McDonnell Douglas* framework requires, Plaintiff first must satisfy his burden of establishing a *prima facie* case of discrimination. Courts in the Second Circuit are divided on the issue of whether "reverse discrimination" claims should be analyzed under a heightened

---

just a contributing or motivating factor." *Hird-Moorhouse v. Belgian Mission to the U.N.*, No. 03-cv-9688, 2010 WL 3910742, at *4 (S.D.N.Y. Oct. 5, 2010) (citing *Gorzynski*, 596 F.3d at 105–06).

standard. *Schwartz v. York College*, No. 06-cv-6754, 2011 WL 3667740, at *6 n.6 (E.D.N.Y. Aug. 22, 2011) (Mauskopf, J.). Like the court in *Schwartz*, this Court finds it unnecessary to determine whether such a standard must be used. Assuming *arguendo* the typical lower standard applies, Plaintiff still fails to establish the third and fourth elements of his discrimination claim.

*(i) Adverse Employment Action*

"A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment. . . . An adverse employment action is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities." *Joseph v. Leavitt*, 465 F.3d 87, 90 (2d Cir. 2006) (citing *Galabya v. N.Y. City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)). In *Joseph*, the Second Circuit held that "administrative leave with pay during the pendency of an investigation does not, without more, constitute an adverse employment action" because "an employee does not suffer a materially adverse change in the terms and conditions of employment where the employer merely enforces its preexisting disciplinary policies in a reasonable manner." *Joseph*, 465 F.3d at 91. Similarly, the Second Circuit has held the suspension of a city police officer with regular pay, but without overtime opportunities, did not constitute an adverse employment action for purposes of Title VII. *Brown v. City of Syracuse*, 673 F.3d 141, 151 (2d Cir. 2012).

Construing the complaint and opposition papers liberally, it appears Plaintiff alleges three main instances that purportedly constitute adverse employment actions: (1) his negative performance evaluation in July 2009; (2) the initiation of disciplinary proceedings against him in September 2009; and (3) his purported constructive discharge. Plaintiff fails to address the constructive discharge issue at all in his opposition papers—even though Defendants addressed it in their moving papers—but the Court addresses all three arguments in turn.

14

Plaintiff claims the performance evaluation he received in July 2009 was a "false evaluation" that "constitues [sic] an adverse employment action for the purpose of establishing a claim of discrimination." Pl.'s Opp'n Mem., at Point II.   Under *Galabya* and its progeny, Plaintiff must demonstrate the July 2009 performance review was accompanied by additional consequences, such as a "decrease in wage or salary, . . . a material loss of benefits, . . . or other indices . . . unique to a particular situation." *Galabya*, 202 F.3d at 640.   However, Plaintiff has failed to allege any additional facts or circumstances that would transform a "negative" performance review into an adverse employment action.   There is no indication his responsibilities, benefits, salary, or anything else materially changed as a result of this evaluation.   Therefore, the July 2009 performance evaluation does not constitute an adverse employment action under Title VII, the ADEA, or § 1983.

Plaintiff also asserts the initiation of disciplinary proceedings against him in September 2009 constitutes an adverse employment action. Pl.'s Opp'n Mem., at Point II.   He states "[t]he incident was never described, it represented a big lie, and its provocative character does constitue [sic] a discrimination action." *Id.*   Defendants claim they received a complaint from Deputy General Counsel Lisa Litera regarding an alleged event in April 2009, "when plaintiff exhibited strange and disruptive behavior" while at work.   Defs.' Rule 56.1, at ¶ 22.   After an investigation, Defendants issued a memorandum to Plaintiff on September 24, 2009, instructing him to "appear at the Office of Disciplinary Proceedings in order to answer questions" about the incident. *Id.* at ¶ 21. The Second Circuit is clear that "an employee does not suffer a materially adverse employment change in the terms and conditions of employment where the employer merely enforces its preexisting disciplinary policies in a reasonable manner." *Joseph*, 465 F.3d at 91.   Here, Defendants simply instructed Plaintiff to appear for an investigatory interview.

15

They did not impose disciplinary measures or penalties, nor did they serve Plaintiff with disciplinary charges. Accordingly, instructing Plaintiff to appear for an interview, without more, cannot be construed as an adverse employment action for the purposes of Title VII, the ADEA, or § 1983.

Lastly, though Plaintiff fails to address this point in his opposition papers, his complaint seems to allege he was constructively discharged. "To establish constructive discharge, a[n employee] 'must show that the abusive working environment became so intolerable that [his] resignation qualified as a fitting response.'" *Holowecki v. Fed. Express Corp.*, 382 Fed. App'x 42, 46 (2d Cir. 2010) (quoting *Penn. State Police v. Suders*, 542 U.S. 129, 134 (2004)). The test is not "merely whether the employee's working conditions were difficult or unpleasant." *Spence v. Maryland*, 995 F.2d 1147, 1156 (2d Cir. 1993). Rather, "[a] claim of constructive discharge must be dismissed as a matter of law unless the evidence is sufficient to permit a rational trier of fact to infer that the employer deliberately created working conditions that were so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Murray v. Town of N. Hempstead*, No. 09-cv-4120, 2012 WL 43645, at *19 (E.D.N.Y. Jan. 6, 2012) (Spatt, J.) (citing *Stetson v. NYNEX Serv. Co.*, 995 F.2d 355, 361 (2d Cir. 1993)).

Plaintiff fails to demonstrate his workplace was so rife with difficulties and unpleasantness that a reasonable person in his position would have been compelled to resign. Receiving a "negative" evaluation is insufficient to sustain a constructive charge claim, and Plaintiff has made no showing of deliberate animus or discriminatory motivation behind his evaluation. Similarly, merely being summoned to an investigative interview does not give rise to a constructive discharge claim. Plaintiff was not presented with actual disciplinary charges, nor was he threatened with being fired. Plaintiff alleges Defendant Macfarlane told him he was "too

16

old," but this one-time alleged comment was a mere unpleasant instance, at worst.  None of these instances standing alone are sufficient to sustain a claim of constructive discharge.  Similarly, taking these allegations together does not demonstrate Defendants deliberately created such difficult or unpleasant working conditions as to warrant Plaintiff's resignation.  Therefore, Plaintiff has not demonstrated he suffered the adverse employment action required under *McDonnell Douglas*.

(ii) *Inference of Discrimination*

It is unnecessary for the Court to reach this *prima facie* element because Plaintiff failed to establish he suffered an adverse employment action.  However, assuming Plaintiff could establish an adverse action, his claims of disparate treatment still fail as a matter of law because he has not demonstrated circumstances giving rise to an inference of discrimination.  Keeping the *de minimis* standard in mind and drawing all reasonable inferences in favor of Plaintiff, the Court finds Plaintiff has not alleged sufficiently discriminatory animus by Defendants based on race, color, or age.

Plaintiff has presented only bare, unsubstantiated allegations that Defendants discriminated against him because of his race and color.  In his deposition, Plaintiff asserts his basis for believing Defendants discriminated against him based on his race is because "Jacob[] and Venugopalan[] are both either from India[] or Pakistan . . . ." Pl.'s Dep. Tr. at 76:12–15.  He also testified at his deposition that Defendant Jacob "sign[ed] a false evaluation, and so . . . I don't need him to say that you are rose and I am a green or something like that.  Since I never argued with him, he never checked me; the only explanation is race . . . ." *Id.* at 110:2–14.  Notably, Plaintiff explicitly states nobody made disparaging comments about his race. *Id.* at 77:12–16.  Plaintiff has not provided this Court with any credible evidence of discrimination

17

based on his race or color, and "unsupported allegations do not create a material issue of fact." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000), *superseded by statute on other grounds as stated in Ochei v. Coler/Goldwater Mem'l Hosp.*, 450 F. Supp. 2d 275, 282 (S.D.N.Y. 2006) (Sweet, J.).  Therefore, Plaintiff's discrimination claims based on race and color fail as a matter of law.

Plaintiff asserts Defendants discriminated against him because of his age based on an alleged comment Defendant Macfarlane made.   Specifically, Plaintiff states Defendant Macfarlane told him "maybe you are too old" and "people in sports retire at 35." Pl.'s Dep. Tr. at 72:11–19.  In the Second Circuit, "the more remote and oblique the [alleged discriminatory] remarks are in relation to the employer's adverse action, the less they prove that the action was motivated by discrimination." *Tomassi v. Insignia Fin. Grp., Inc.*, 478 F.3d 111, 115 (2d Cir. 2007).  Conversely, "[t]he more a remark evinces a discriminatory state of mind, and the closer the remark's relation to the allegedly discriminatory behavior, the more probative that remark will be." *Id.*  The Second Circuit employs a four-factor test to evaluate the probative value of a remark made by an employer: "(1) who made the remark (i.e., a decision-maker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (i.e., whether it was related to the decision-making process)." *Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 149 (2d Cir. 2010).

Analyzing the alleged discriminatory claim under *Henry* and drawing all reasonable inferences in favor of Plaintiff, the Court finds no reasonable trier of fact could conclude the remark is sufficiently probative of age discrimination.  Defendant Macfarlane is a Deputy Commissioner, but Plaintiff has not alleged Macfarlane had anything to do with his performance

evaluation, was involved in the decision to proceed with the investigation into Plaintiff's alleged actions, or participated in any way in the negotiation and execution of the Stipulation. Though Macfarlane denies ever making such an age-related comment, the Court must assume he did for purposes of a summary judgment motion. Clearly, the alleged comment refers to age on its face. However, Macfarlane did not make the alleged comment contemporaneously with any alleged adverse employment action, and this was the sole instance Plaintiff alleges Macfarlane referred to his age. Coupled with Macfarlane's role as a non-decision-maker, this demonstrates the comment is, at most, a "stray" remark not sufficiently probative of age discrimination. Therefore, Plaintiff's age discrimination claims fail as a matter of law.

*b. State & City Claims*

Plaintiff brings discrimination claims based on race, color, and age under the SHRL. These claims "are analytically identical to claims brought under Title VII." *Zambrano-Lamhaouhi v. N.Y. City Bd. of Educ.*, No. 08-cv-3140, 2011 WL 5856409, at *6 (E.D.N.Y. Nov. 21, 2011) (citing *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 107 n.10 (2d Cir. 2011)). Likewise, "age discrimination claims under the ADEA [and the] []SHRL . . . are analyzed under the same standard." *Tomassi v. Insignia Fin. Grp., Inc.*, 478 F.3d 111, 114 n.3 (2d Cir. 2007). Accordingly, because Plaintiff's discrimination claims brought under Title VII and the ADEA fail as a matter of law, his discrimination claims pursuant to the SHRL likewise fail.

Finally, Plaintiff brings discrimination claims based on race, color, and age under the CHRL. "Discrimination claims brought under the . . . CHRL are analyzed under the same standard as Title VII and the ADEA." *Birkholz v. City of N.Y.*, No. 10-cv-4719, 2012 WL 580522, at *11 (E.D.N.Y. Feb. 22, 2012) (Garaufis, J.) (citing *Tomassi*, 478 F.3d at 114 n.3).

However, the "CHRL, as amended by the Local Civil Rights Restoration Act of 2005 . . . makes it clear that it 'shall be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York State civil and human rights laws . . . have been so construed.'" *Zambrano-Lamhaouhi*, 2011 WL 5856409, at *7 (citing N.Y. City Admin. Code §8-130). Therefore, "claims under the [CHRL] must be given 'an independent liberal construction analysis in all circumstances . . . .'" *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009) (quoting *Williams v. N.Y. City Hous. Auth.*, 872 N.Y.S.2d 27, 31 (1st Dep't 2009)). Further, "under the CHRL, the plaintiff need not show that [he] was subject to an adverse employment action; instead, [he] need only show that [he] has been treated less well than other employees because of" his membership in a protected class. *Zambrano-Lamhaouhi*, 2011 WL 5856409, at *8 (internal citations and quotations omitted).

Even under this liberal construction, Plaintiff's discrimination claims still fail for largely the same reasons as his federal claims. The only support Plaintiff provides for his claims based on race and color is that certain Defendants are from "India[] or Pakistan," and this is insufficient to raise an inference of discrimination. The only support Plaintiff provides for his claims based on age is Defendant Macfarlane's alleged comment. While the comment does refer to Plaintiff's age, as described above a "stray" comment from a non-decision-maker that is not made contemporaneously with any sort of adverse employment action is insufficient to raise an inference of discrimination, especially when it is the sole instance of alleged age discrimination. Therefore, all claims under the CHRL based on age, race, and color fail as a matter of law.

**E. Retaliation Claims**

*a. Federal Claims*

Construing the complaint liberally, Plaintiff asserts retaliation claims pursuant to Title VII, the ADEA, and § 1983. Courts analyze retaliation claims brought under Title VII and the ADEA in the same manner, *Birkholz*, 2012 WL 580522, at *7, and this Court will address these claims first. "To state a claim for retaliation . . . a plaintiff must plead facts that would tend to show that: (1) he participated in a protected activity known to the defendant; (2) he suffered an adverse employment action; and (3) there exists a causal connection between the protected activity and the adverse action." *Id.* (citing *Patane v. Clark*, 508 F.3d 106, 115 (2d Cir. 2007)).

Assuming *arguendo* Plaintiff engaged in protected activity, he fails to establish either of the remaining *prima facie* elements. As detailed above, Plaintiff suffered no adverse employment action: he was simply called to an investigative interview, with no additional consequences. Further, Plaintiff demonstrates no causal connection between any alleged protected activity and the alleged adverse action. Plaintiff asserts three separate protected activities: (1) filing an Article 78 proceeding against defendants in 1992; (2) filing a discrimination action against Defendants in the Eastern District of New York in 1998; and (3) sending a letter to Representative Carolyn B. Maloney of the United States House of Representatives, alleging he was forced to retire and seeking her assistance. More than seventeen years passed between the Article 78 filing and the alleged adverse employment action. More than eleven years passed between the discrimination suit and the alleged adverse employment action. There is simply no temporal proximity or any indices of a causal connection between these events. Finally, Plaintiff signed the Intent to Retire form on September 22, 2009 and the Stipulation of Settlement form on October 7, 2009, but it was not until approximately

November 27, 2009 that he wrote the letter to Representative Maloney. It defies logic that Defendants retaliated against Plaintiff in September and October for something he did not do until the end of November. Therefore, the Title VII and ADEA retaliation claims are dismissed.

To survive summary judgment on a § 1983 retaliation claim, "a plaintiff must demonstrate that he engaged in protected speech, and that the speech was a substantial or motivating factor in an adverse decision taken by the defendant." *Beechwood Restorative Care Ctr. v. Leeds*, 436 F.3d 147, 152 (2d Cir. 2006). Plaintiff fails to establish a *prima facie* case for retaliation under § 1983 for the same reasons his Title VII and ADEA claims fail. Assuming *arguendo* Plaintiff engaged in protected speech, he has not demonstrated he was subject to an adverse decision by Defendants. Even if he had, Plaintiff has made no evidentiary showing that the alleged protected speech from at least a decade earlier had any impact on the decision to take the alleged adverse action. Therefore, the § 1983 retaliation claim is dismissed.

*b. State & City Claims*

Plaintiff also brings retaliation claims pursuant to the SHRL and the CHRL. "[R]etaliation claims under the []SHRL are generally governed by the same standards as federal claims under Title VII." *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 609 (2d Cir. 2006). Therefore, because Plaintiff's retaliation claims under Title VII fail as a matter of law, as analyzed above, his SHRL claims of retaliation likewise fail. "The CHRL is slightly more solicitous of retaliation claims than federal and state law because, rather than requiring a plaintiff to show an 'adverse employment action,' it only requires him to show that something happened that was 'reasonably likely to deter a person from engaging in protected activity.'" *Birkholz*, 2012 WL 580522, at *15 (citing N.Y.C. Admin. Code § 8-107(7)). Thus, the "retaliation inquiry under the CHRL is broader than its federal counterpart." *Fincher v. Depository Trust &*

22

*Clearing Corp.*, 604 F.3d 712, 723 (2d Cir. 2010) (internal citations omitted).  Keeping this more flexible standard in mind, the Court finds Plaintiff's claim fails as a matter of law.  As described above, there is simply no causal connection between any alleged protected activity and any action taken by Defendant that reasonably could be construed as likely to deter a person from engaging in protected activity.

**F. Hostile Work Environment Claims**

*a. Federal & State Claims*

Plaintiff brings a claim for hostile work environment under Title VII, § 1983, the ADEA, and the SHRL.  "Hostile work environment claims are evaluated under the same standards [as Title VII] when brought pursuant to § 1983 or the SHRL."  *Zambrano-Lamhaouhi*, 2011 WL 5856409, at *9 (citing *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 609 (2d Cir. 2006); *Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006)).  Likewise, courts analyze hostile work environment claims brought under the ADEA using the same standard.  *Francis v. Elmsford Sch. Dist.*, 263 Fed. App'x 175, 177 (2d Cir. 2008) (citing *Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 240–41 (2d Cir. 2007)).

The United States Supreme Court articulated in *Harris v. Forklift Services., Inc.* that a hostile work environment exists "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  510 U.S. 17, 21 (1993) (internal quotations and citations omitted).  To survive a motion for summary judgment, a plaintiff "must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of [his] working environment."  *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000)

23

(internal quotations and citations omitted).  Courts "must take care . . . not to view individual incidents in isolation. . . . 'The objective hostility of a work environment depends on the totality of the circumstances' . . . ." *Redd v. N.Y. State Div. of Parole*, 678 F.3d 166, 176 (2d Cir. 2012) (citing *Petrosino v. Bell Atl.*, 385 F.3d 210, 221 (2d Cir. 2004)).

Construing the complaint and opposition papers liberally, Plaintiff fails to establish a claim for a hostile work environment.  In his opposition papers, Plaintiff appears to argue three instances in support of this claim: (1) "A [sic] intention or threat of declaring the employee "mentally incompetent["] represents the highest act of intimidation"; (2) "[T]he frustration of having his superiors guilty of never ending mistakes in the projects design [sic] by them . . . and the fact they got promoted in spite of their failures . . . ."; and (3) "The new hires, young engineers out of school, were paid higher than the plaintiff."  Pl.'s Opp'n Mem., at Point III.  The Court finds that none of these events in isolation are extraordinarily severe or pervasive enough to survive a motion for summary judgment.  Likewise, these events taken together are not sufficiently continuous or concerted to survive a motion for summary judgment.

Plaintiff fails to provide even a scintilla of evidence to support (2) or (3), and thus these bald assertions cannot support his claim of hostile work environment.  The Court acknowledges the lack of tact and the inappropriateness of calling Plaintiff part of a "mental retard case," but Plaintiff has not demonstrated this comment is so extraordinarily severe as to rise to the level of an abusive work place.  Plaintiff provides no support for his contention that Defendants actually intended to declare him mentally incompetent, as opposed to making an insensitive comment in an email.  Further, because Plaintiff fails to demonstrate he was aware of this email until discovery commenced in this action, it could not have altered his working conditions.  Importantly, Plaintiff fails to establish this comment refers in any way to age, race, or color.

24

Therefore, based on the totality of the circumstances, this Court finds Plaintiff fails to demonstrate that a rational trier of fact could find Defendants subjected him to a hostile work environment in violation of Title VII, § 1983, the ADEA, or the SHRL.

*b. City Claims*

"The [CHRL] was intended to be more protective than the state and federal counterpart," and thus "[t]he standard for maintaining a hostile work environment claim is lower under the [CHRL]." *Bermudez v. City of N.Y.*, 783 F. Supp. 2d 560, 579 (S.D.N.Y. 2011) (McMahon, J.) (citing *Farrugia v. N. Shore Univ. Hosp.*, 820 N.Y.S.2d 718, 724 (Sup. Ct. 2006)). Under the CHRL, a plaintiff "need not demonstrate that the treatment was 'severe or pervasive,'" but rather that he "has been 'treated less well than other employees because of [his membership in a protected class.]'" *Zambrano-Lamhaouhi*, 2011 WL 5856409, at *9 (citing *Williams v. N.Y. City Hous. Auth.*, 872 N.Y.S.2d 27, 39–40 (1st Dep't 2009)). "Even if the plaintiff points to evidence of unequal treatment, the defendant can prevail on summary judgment by proving that the conduct in question could only be reasonably interpreted by a trier of fact as representing no more than petty slights or trivial inconveniences." *Zambrano-Lamhaouhi*, 2011 WL 5856409, at *9 (internal quotations and citations omitted).

Drawing all reasonable inferences in favor of Plaintiff and keeping the more flexible standard of the CHRL in mind, Plaintiff's hostile work environment claim under the CHRL fails as a matter of law. As analyzed above, Plaintiff argues in his opposition papers that three separate instances constitute a hostile work environment, yet fails to provide any evidence of two of these alleged instances. As for the third, the "mental retard case" reference, Plaintiff provides no connection between the comment and his membership in any protected class. Further, he was completely unaware of the comment until after he initiated the instant lawsuit. Plaintiff simply

25

alleges nothing more than, at most, petty slights or trivial inconveniences.  Accordingly, his claims pursuant to the CHRL fail as a matter of law.

**G. Section 1983 Claims Against DDC and the City of New York**

Plaintiff asserts a § 1983 claim against the City of New York and the DDC.  "[A] municipality cannot be held liable pursuant to § 1983 solely because of the discriminatory actions of one of its employees. . . .  [It] can therefore only be held liable if its 'policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'"  *Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 128 (2d Cir. 2004) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 694 (1978)).

Plaintiff fails to produce any credible evidence the City of New York or the DDC had a policy, practice, or custom of discriminating against Caucasian or older employees.  He makes bald, unsupported assertions in his opposition papers, such as: "[t]he discriminatory acts were committed pursuant to a hidden agenda, running counter to paper written as official policy," "[t]he grandious [sic] words included in the 'official policy' were trumpled [sic] under the foot by the managers that were supposed [sic] to preserve it," and "[t]he practice of DDC management was to oppress and subpress [sic] any discriminated employee claims of elementary employment rights and justice."  Pl.'s Opp'n Mem., at Point V.  As with many of his other claims, Plaintiff provides no credible evidentiary support for these allegations, and "unsupported allegations do not create a material issue of fact."  *Weinstock*, 224 F.3d at 41.  Therefore, Plaintiff's § 1983 claims against the City of New York and DDC fail as a matter of law.

**H. Salary Differential**

Plaintiff alleges Defendants did not grant him a salary increase to which he asserts he was entitled. The Court finds it difficult to discern whether Plaintiff alleges he was entitled to an increase in salary of $1,700 per year, approximately $66,000 per year, or both. It appears Plaintiff alleges the salary differential(s) resulted from discrimination in violation of the Equal Pay Act, Title VII, the ADEA, § 1983, the SHRL, and the CHRL. These claims fail as a matter of law.

Plaintiff fails to assert a claim under the Equal Pay Act in his complaint, but he asserts in his opposition papers "[t]he Equal Pay Act (EPA) it [sic] is enforceable at the case at bar." Pl.'s Opp'n Mem., at Point VI. "The federal Equal Pay Act . . . prohibits the payment of unequal wages to employees on the basis of sex." *Jamilik v. Yale Univ.*, 362 Fed. App'x 148, 149 (2d Cir. 2009) (citing 29 U.S.C. § 206(d)(1)). Nowhere in his complaint or motion papers does Plaintiff allege he his alleged salary differential was the result of discrimination based on sex. He provides not one shred of evidence of gender-based discrimination to support his bald assertion that he was "discriminated in payment all the time, an infinite of [sic] time." Pl.'s Opp'n Mem., at Point VI. Therefore, his claims under the Equal Pay Act fail as a matter of law.

Plaintiff appears to allege he was either not promoted or underpaid because of racial, age, and religious discrimination in violation of Title VII, the ADEA, § 1983, the CHRL, and the SHRL. *Id.* As with his Equal Pay Act allegation, however, Plaintiff provides no evidence to support such claims. He makes no causal argument between any alleged lack of promotion or underpayment and his race, age, or religion. The closest Plaintiff comes to providing evidence of wrongdoing is an affidavit by Marylin Reed, who states she is a former employee of the Department of Environmental Protection and the DDC. This affidavit, however, is filled with

27

inadmissible hearsay. Ms. Reed recalls a conversation from 1993 in which Plaintiff purportedly tells her about alleged anti-Semitic comments made by unidentified employees of DDC. Ms. Reed also recalls conversation from 1986 and 1998 in which two unidentified former DDC employees also purportedly told her about allegedly anti-Semitic instances in the workplace.

"An affidavit . . . used to . . . oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Ms. Reed simply is simply describing alleged conversations she had years ago in which Plaintiff and two unidentified persons purportedly told her about things that were said to them out of her presence. She has no personal knowledge of these alleged instances of anti-Semitism, and thus her affidavit is not competent material for the Court to consider on summary judgment. Even if the Court could consider Ms. Reed's affidavit as evidence, these alleged conversations from 1986, 1993, and 1998 are insufficient to demonstrate actionable religious discrimination against Plaintiff. Therefore, his claims pursuant to Title VII, the ADEA, § 1983, the SHRL, and the CHRL fail as a matter of law.

## <u>CONCLUSION</u>

Although Plaintiff hurled virtually every pitch in the Civil Rights arsenal, none

approached the strike zone established by this Circuit.  Plaintiff's cross-motion for summary

judgment is denied.  Defendants' motion for summary judgment is granted.


**<u>SO ORDERED</u>**

Dated: Brooklyn, New York
       July 11, 2012

_____

HON. WILLIAM F. KUNTZ, II
United States District Judge